**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-02249-STV

S.M.,[1]

     Plaintiff,

v.

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

     Defendant.

_____

**ORDER**
_____

Chief Magistrate Judge Scott T. Varholak

This matter is before the Court on Plaintiff S.M.'s Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401 *et seq*., and 1381-83c, respectively.  [#1]  The parties have both consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  [#9]  The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  This Court has carefully considered the Complaint [#1], the Social Security Administrative Record [#10], the parties' briefing [## 11, 12, 13], and the applicable case law, and has determined that oral

_____

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

argument would not materially assist in the disposition of this appeal.  For the following reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter for further proceedings consistent with this Order.

## I.    LEGAL STANDARD

### A.    Five-Step Process for Determining Disability

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2]  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax*, 489 F.3d at 1084.  "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . ., the Commissioner [ ] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005).  The five-step inquiry is as follows:

---

[2] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910; *see also* 20 C.F.R. §§ 404.1572, 416.972.

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[3]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.,* the functional capacity the claimant retains despite his impairments—is sufficient to allow the claimant to perform his past relevant work, if any;

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017). "The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four," after which the burden shifts to the Commissioner at step five to show that the claimant retains the ability to perform work in the national economy. *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084. "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo. 2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

---

[3] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

**B.      Standard of Review**

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence." *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)).   "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey*, 250 F. Supp. 3d at 785 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quotation omitted).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* at 103.  Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).  "It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).  The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).  The Court,

however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Hackett*, 395 F.3d at 1172.

## II.    BACKGROUND

Plaintiff was born in 1971.  [AR 312][4]  Plaintiff speaks and understands English. [AR 347]  She graduated from high school.  [AR 349]  On September 16, 2020, Plaintiff protectively submitted a claim for DIB [AR 312-15] and on September 22, 2020, she protectively applied for SSI [AR 316-29].  In each filing she claimed a disability onset date of April 15, 2019 [AR 309, 316], and thus Plaintiff was 44 years old at the time of the alleged onset.  Plaintiff claims disability based upon blind or low vision, back injury, depression, digestive issues, and a hormone deficiency.  [AR 348]  Plaintiff has worked as a cook, receptionist, and warehouse worker.  [AR 350]

### A.    Medical Background[5]

Plaintiff's fiancée passed away in January 2020.  [AR 495]  During a February 7, 2020 medical visit, Plaintiff was tearful but indicated that she was coping well.  [AR 495] On December 9, 2020, Plaintiff sought treatment for depression at the recommendation of her primary care physician.  [AR 701]  Her symptoms included sadness, lack of motivation, difficulties sleeping or oversleeping, lack of appetite, restlessness and difficulty concentrating.  [*Id.*]  Plaintiff explained that grieving and health problems contributed to her depression.  [*Id.*]  The treatment provider noted that Plaintiff's depression had impacted her social functioning because she lacked the motivation to

---

[4] All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case.  [#10]

[5] Plaintiff's claimed error focuses on the Commissioner's treatment of Plaintiff's mental impairments.  [#11]  Thus, the Court focuses its discussion of Plaintiff's medical background to those issues that relate to her mental impairments.

complete activities of interest or leave the home when depressed.  [*Id.*]  Plaintiff lacked suicidal ideation.  [*Id.*]

Plaintiff had additional sessions through 2021.  [AR 708, 710, 712-15, 795-98, 1376-1423]  Many of the early sessions focused on coping mechanisms and ways that Plaintiff could improve her mental health and self-care.  [AR 710, 795-800, 1395-1420]  During a June 28, 2021 treatment session, Plaintiff explained that she had been hearing voices since 2003.  [AR 1421]  Plaintiff explained that her ex was a methamphetamine manufacturer and Plaintiff had smoked methamphetamine for a few years, and that this experience may have caused the voices.  [*Id.*]  Plaintiff explained that the voices were not harmful and that she believed they were spiritual.  [*Id.*]

Notes from September 1, 2021 reflect a diagnosis of major depressive disorder, single episode, unspecified.  [AR 1011]  Plaintiff reported frequent sadness, depression and anxiety, as well as low energy and poor sleep.  [AR 1020]  Records from that date reflect that Plaintiff had been hearing voices, which the treating physician believed was the result of trauma as opposed to schizophrenia.  [AR 1011]

During an October 8, 2021 treatment session Plaintiff acknowledged that she looked at the world very negatively but indicated that she was motivated to change that negative outlook. [AR 1393]  She had linear, logical thinking.  [*Id.*]  Her mood was anxious and depressed though she had good insight and judgment.  [AR 1394]

Plaintiff presented to an October 18, 2021 treatment session with linear, logical thinking, absent of delusional or paranoid thinking.  [AR 1391]  She reported depressive symptoms and increased anxiety.  [*Id.*]  She also noted that she had been experiencing

auditory hallucinations for several years.  [*Id.*]  She said the voices were present all the time though they did not command her to do anything.  [*Id.*]

During an October 25, 2021 treatment session Plaintiff reported depression but did not have any thoughts of self-harm.  [AR 1389]  She again reported hearing constant voices.  [*Id.*]  Nonetheless, her thinking was linear and she did not have any delusional or paranoid thinking.  [*Id.*]

A note from a November 1, 2021 treatment session indicated that Plaintiff was continuing to experience auditory hallucinations which were frustrating her.  [AR 1386]  She was tearful during the session.  [*Id.*]  Plaintiff explained that the intensity of her depression varied, but that she experienced constant fatigue and a lack of motivation. [AR 1386-87]

During a November 8, 2021 treatment session Plaintiff indicated that she was managing her stress.  [AR 1383]  She was fully oriented with linear, logical thinking.  [*Id.*] Plaintiff stated that she had been dealing with depression for over twenty years and had not ever really been happy.  [*Id.*]

During a November 11, 2021 treatment session Plaintiff explained that she can hear voices most of the time and that they make a running, critical commentary of her actions.  [AR 2136]  Plaintiff said that her depression had worsened since the pandemic and the death of her ex-husband in January 2020.  [*Id.*]  Plaintiff expressed symptoms of post-traumatic stress disorder ("PTSD") from the time she lived with her ex-husband, who was a methamphetamine dealer.  [*Id.*]  Her treatment provider assessed her with PTSD; recurrent major depressive disorder with atypical feature; and major depressive disorder, recurrent, severe with psychotic symptoms.  [AR 2137]

During a November 22, 2021 treatment session Plaintiff again reported hearing voices.  [AR 1381]  She said the voices were frustrating and making her angry.  [*Id.*] Plaintiff reported low motivation and depression, though she was oriented and expressed linear, logical thinking.  [*Id.*]

A note from a November 29, 2021 treatment session indicated that Plaintiff's mood was stable and she was fully oriented and alert.  [AR 1379]  Plaintiff described herself as feeling "numb."  [*Id.*]  Plaintiff struggled to stay motivated but was able to take care of her daily needs.  [*Id.*]

A note from a December 6, 2021 treatment session indicated that the voices were "better."  [AR 1377]  She reported that her mood was "good" and she was fully oriented with linear, logical thinking.  [*Id.*]  The treatment provider noted that Plaintiff was managing her depression symptoms.  [*Id.*]

During a December 16, 2021 treatment session Plaintiff indicated that she was very anxious and overwhelmed at times.  [AR 2134]  She said that Zoloft was helping with her depression but not with her anxiety.  [*Id.*]  She was still experiencing hallucinations though she indicated that they were easier to control.  [*Id.*]  Her speech was clear, her thought process was linear and she expressed her feelings well.  [*Id.*]  The treatment provider did not notice any cognitive impairment.  [*Id.*]  Plaintiff indicated that she sleeps poorly though she had experienced some recent improvement in her sleep.  [*Id.*]  Notes from a January 17, 2022 treatment session were similar to those from the December 16, 2021 session.  [AR 2131-33]

Notes from a February 21, 2022 treatment session indicated that Seroquel was helping Plaintiff sleep but that she was still hearing voices.  [AR 2128]  Plaintiff indicated

that the "wall" between her and the voices was disintegrating and that she felt the urge to answer the voices.  [*Id.*]  Her speech was clear, her thought process was linear and she expressed her feelings well.  [AR 2129]

March 21, 2022 treatment notes indicated that Seroquel had not been effective at treating the hallucinations despite increasing the dosage from 100 mg to 300 mg.  [AR 2125]  As a result, Plaintiff stopped taking the Seroquel.  [*Id.*]  The decision was made to switch her antipsychotic medication to Risperdal.  [*Id.*]  A few weeks later, Plaintiff called her therapist saying that the Risperdal was making her feel "weird," "dislocated," and "not like herself."  [AR 2124]

During a June 15, 2023 treatment session Plaintiff indicated that she was depressed, tired, irritable and unmotivated.  [AR 2121]  She said that she stays in bed due to pain and depression.  [*Id.*]  She reported mood swings and insomnia.  [*Id.*]  She also reported racing thoughts and auditory hallucinations.  [*Id.*]  Plaintiff asked to be placed back on Zoloft and her Risperdal, which had apparently been stopped, was restarted.  [*Id.*]

During a July 27, 2023 treatment session Plaintiff indicated that she had not yet restarted the Risperdal because she was afraid of the side effects.  [AR 2118]  She was still having racing thoughts, hallucinations and insomnia.  [*Id.*]  She said that she was feeling "out of it" and unmotivated.  [*Id.*]

**B.    Opinion Evidence**[6]

On March 16, 2021, M. Ellen Fontenot, Psy.D. performed a consultative psychological examination.  [877-883]  Plaintiff was alert and oriented to person, place, time and situation.  [AR 879]    Her thought content was linear and she appeared to have an average ability to communicate.  [AR 879-80]  Her affect and range of emotions were normal.  [AR 880]  Dr. Fontenot noted that Plaintiff's depression scores were moderate and her anxiety symptoms were mild.  [*Id.*]  Plaintiff's cognitive functioning scores and judgment and insight were generally described as fair or average, though both her personal insight and her ability to understand how her behaviors affect others were described as below average.    [AR 880-81]    Dr. Fontenot noted that Plaintiff's "psychological/psychiatric conditions appear to have had a mild influence on day to day work tolerance and job duties."  [AR 878]  Dr. Fontenot further noted that Plaintiff's basic adaptive behaviors, such as preparing food and managing money, were not impacted by her psychological conditions.  [AR 879]  According to Dr. Fontenot, Plaintiff's ability to get along with others and resolve daily problems was "fair."  [*Id.*]  Dr. Fontenot diagnosed Plaintiff with: (1) persistent depressive disorder, with anxious distress, (2) alcohol use disorder, mild to moderate, and (3) opioid use disorder, moderate.  [AR 881]  Dr. Fontenot concluded that Plaintiff's ability to follow more complex instructions or directions in a work setting appeared to be mildly impaired; her ability to perform multi-step tasks appeared to be mildly impaired; her ability to relate to others, including fellow workers and

---

[6] As with the medical background section, the Court focuses on those opinions related to Plaintiff's mental impairments and how those impairments could impact Plaintiff's ability to work.  Michael Lace, Psy.D., provided an opinion on Plaintiff's mental impairments at the hearing before the Administrative Law Judge.  That opinion is discussed in more detail in the Analysis Section below.

supervisors, was mildly impaired; and her ability to withstand mental stress and pressures associated with day-to-day work activity was mildly to moderately impaired. [AR 882] Dr. Fontenot did not find any other psychological impairments. [*Id.*]

On May 12, 2021, Douglas Hanze, Ph.D., a non-examining consultative psychologist, conducted a records evaluation. [AR 95, 100-02] Dr. Hanze opined that Plaintiff was mildly limited in her ability to understand, remember or apply information; mildly limited in her ability to concentrate, persist or maintain pace; moderately limited in her ability to adapt or manage herself; and moderately limited in her ability to respond appropriately to changes in the work setting. [AR 95, 100-01] Dr. Hanze concluded that Plaintiff retained the mental ability to do work involving some skills but not involving complex duties; and that Plaintiff can be expected to do work requiring up to one-half a year's time to learn techniques, acquire information and develop the faculty needed for an average job performance. [AR 101]

On January 7, 2022, Hillary Weiss, Ph.D., a non-examining consultative psychologist, conducted a records review. [AR 149-50, 154-56] Dr. Weiss opined that Plaintiff was mildly limited in her ability to understand, remember or apply information; mildly limited in her ability to concentrate, persist or maintain pace; moderately limited in her ability to adapt or manage herself; and moderately limited in her ability to respond appropriately to changes in the work setting. [AR 148-50, 154-55] Dr. Weiss concluded that Plaintiff was capable of sustaining simple and detailed tasks but not complex work that is high stress or requires substantial independent judgment. [AR 155]

## C.    Procedural History

Plaintiff's applications for DIB and SSI were initially denied on May 20, 2021. [AR 79-130]  Plaintiff requested reconsideration and on January 11, 2022, Plaintiff's

applications were again denied.  [AR 131-86]  On January 31, 2022, Plaintiff completed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR 244-53]  A hearing was conducted before ALJ Jennifer Millington on May 9, 2023.  [AR 1842-80]  On September 1, 2023, ALJ Millington issued a decision that Plaintiff was not under a disability from April 15, 2019, the alleged onset date, through September 1, 2023, the date of the decision.  [AR 1796-1811]

Plaintiff requested a review of that decision by the Appeals Council and, on April 18, 2023, the Appeals Council denied Plaintiff's request for review.  [AR 1819-24] On December 12, 2023, Plaintiff filed a complaint with this Court.  [AR 1825-28]  On April 9, 2024, pursuant to the Commissioner's Unopposed Motion to Remand for Further Proceedings, this Court remanded the matter to the Commissioner for further administrative proceedings.  [AR 1829-35]  On April 22, 2025, the Appeals Council remanded the matter back to the ALJ for further consideration of the psychological opinion evidence.  [AR 1838-39]

On April 7, 2025, another hearing was held before ALJ Millington.  [AR 1756-90] Plaintiff was represented at the hearing by attorney Michael Ash.  [AR 1756]  Plaintiff, Vocational Expert ("VE") Pat Pauline, Michael Lace, Psy.D. and Joseph Gaeta, M.D. all testified at the hearing.  [AR 1756-90]  On May 7, 2025, ALJ Millington issued an opinion that Plaintiff was not under a disability from April 15, 2019, the alleged onset date, through May 7, 2025, the date of the ALJ's decision.  [AR 1731-45]  On July 22, 2025, Plaintiff timely filed her appeal with this Court.  [#1]

### D.    The ALJ's Decision

After evaluating the evidence pursuant to the five-step sequential evaluation process, the ALJ denied Plaintiff's applications for DIB and SSI.  [AR 1742-45]  At step

one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 15, 2019, the alleged onset date.  [AR 1733-34]  At step two, the ALJ found the following medically determinable severe impairments: degenerative disc disease, status post-cervical fusion; lumbar and cervical spondylosis and radiculopathy; spinal stenosis; major depression with psychotic features; anxiety disorder; and PTSD.  [AR 1734]  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the appendix of the regulations.  [AR 1734-36]

Following step three, the ALJ determined that Plaintiff retained the RFC to perform light work[7] but with the following limitations:

> [Plaintiff] can frequently climb, balance, kneel, crouch and crawl, can have no fast paced production requirements—like factory and production line work, and can have no work where others depend on her to get their work done.  Further, she can have little to no access to alcohol and over the counter medications, such as is required in pharmaceutical and law enforcement jobs.  [Plaintiff] is limited to routine work where there are few if any major changes

[AR 1737]  The ALJ provided a narrative setting forth the evidence considered in determining the RFC and explaining the ALJ's consideration of the medical opinions in the record.  [AR 1737-44]

At step four, the ALJ found that Plaintiff had no past relevant work.[8]  [AR 1744]  At step five, the ALJ determined that there were jobs that existed in significant numbers in

---

[7] Light work is defined to include work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and that "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[8] At step four, a claimant will be determined to be "not disabled" when it is determined that the claimant retains the RFC to perform either:  (1) the actual functional demands and job duties of a particular past relevant job as performed by the claimant, or (2) the

the national economy that Plaintiff could have performed, including the jobs of router, collator operator, and office helper.  [AR 1744-45]  Based on this, the ALJ determined that Plaintiff was "not disabled" from April 15, 2019, the alleged onset date, through May 7, 2025, the date of the ALJ's opinion.  [AR 1745]

### III.    Analysis

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ erred by failing to reconcile the internal inconsistencies in Dr. Lace's opinion, simultaneously assessing mild limitations in social interactions yet opining that no additional social restrictions were necessary in the RFC.  [#11 at 7-16]  Second, and relatedly, Plaintiff argues that the ALJ erred by failing to account for Plaintiff's mild social limitations in the RFC.  [*Id.* at 16-23]  Because the Court agrees that the ALJ erred in failing to either account for Plaintiff's mild social limitations in the RFC, or explain the lack of accommodation for her social limitations in the RFC, the Court agrees that the ALJ's decision must be reversed.

As explained above, at step two, the Commissioner determines whether a claimant has any severe physical or mental impairments.  *Williams*, 844 F.2d at 750.  "To find a 'severe' impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams*, 844 F.2d at 751).  When evaluating the severity of mental impairments, the Commissioner follows a two-part analysis.  *Wells*, 727 F.3d at 1068 (citing 20 C.F.R. §§ 404.1520a(a),

---

functional demands and job duties of that job as generally required by employers throughout the national economy.  *See* Social Security Ruling 82-61, 1982 WL 31387 (1982); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993).

416.920a(a)).   First, the ALJ must decide whether the claimant has a medically determinable mental impairment.   *Id.* (citing 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1)).   Next, the ALJ "must . . . rate the degree of the functional limitation resulting from" any such impairments "in four broad functional areas:" understand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.   *Id.*; 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).[9]

Here, at step two, the ALJ concluded that Plaintiff had a mild limitation in her ability to interact with others.   [AR 1736]  The ALJ noted that Plaintiff reported getting along with others except for some irritability, although she stated that she did not see others much and did not talk to friends or neighbors.   [*Id.*]  Later, the ALJ found Dr. Lace's testimony and opinions persuasive, and those opinions included Dr. Lace's conclusion that Plaintiff had mild limitations in her ability to interact with others.   [AR 1742-43]  Thus, through steps two and three, the Court was able to follow the ALJ's analysis and can accept the ALJ's conclusion that Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation," and thus the Paragraph B criteria were not satisfied.

That conclusion, however, should not have ended the ALJ's analysis of Plaintiff's mental impairments.   Even if the ALJ ultimately finds "that a claimant's medically determinable mental impairments are 'not severe,'" she generally must "further consider and discuss them as part of [her] [RFC] analysis at step four."   *Wells*, 727 F.3d at 1064 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).   In other words, "the Commissioner's

---

[9] Effective January 17, 2017, the regulations were updated, slightly modifying the four functional areas in effect at the time of the *Wells* decision.  *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138-01 (Sept. 26, 2016).

procedures do not permit the ALJ to simply rely on [her] finding of non-severity as a substitute for a proper RFC analysis."[10]  *Id.* at 1065 (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)).

Here, the ALJ's analysis violated this prohibition.  In fashioning the RFC, the ALJ does not appear to have accounted for Plaintiff's limitations in social interaction.   [AR 1737-44]  Nor does the ALJ explain why she did not include any such limitations in the RFC.  [*Id.*]  "Without any discussion of Plaintiff's [social limitations] in [her] RFC, the court cannot conclude that the ALJ properly considered th[ese] impairment[s], singly and in combination with [Plaintiff's] other impairments, thereby necessitating remand of this matter to the ALJ."[11]  *Berg v. Berryhill*, No. 16-cv-02718-NYW, 2018 WL 276280, at *9 (D. Colo. Jan. 3, 2018); *see also Trujillo v. Soc. Sec. Admin.,* No. 17-cv-1590-WJM, 2018 WL 4599690, at *5 (D. Colo. Sept. 25, 2018) (finding error and reversing where the ALJ gave great weight to a medical opinion finding mild limitations in concentration, persistence, and pace at step two, yet failed to address those limitations in the step four

---

[10] Notwithstanding the general rule, an ALJ may "of course, find at step two that a medically determinable impairment posed *no* restriction on the claimant's work activities." *Wells*, 727 F.3d at 1065 n.3 (citing 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4)).  Such a finding that the claimant has no limitation in any of the four functional areas "obviate[s] the need for further analysis at step four." *Id.*  But, here, as detailed above, the ALJ found that Plaintiff's mental impairments caused mild limitations in her ability to interact with others [AR 1736], and thus further analysis was required at step four.

[11] Nor does it suffice for the ALJ to simply parrot the statement that she "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  [AR 15]; *see Willcoxon v. Berryhill*, No. 17-cv-01248, 2018 WL 2998894, at *3 (D. Colo. June 15, 2018) ("[The ALJ's] boilerplate statement that he 'considered all symptoms' when formulating the RFC is not enough to remedy his failure to actually discuss [the plaintiff's] alleged mental disorders."); *Berg v. Berryhill*, No. 16-cv-02718-NYW, 2018 WL 276280, at *9 (D. Colo. Jan. 3, 2018) (finding it insufficient for "the ALJ to merely state, 'the undersigned has thoroughly considered and factored in all of the above medically determinable impairments . . . when formulating the [RFC] set forth in this decision'").

RFC analysis); *Troe v. Berryhill*, No. 16-cv-02794-MEH, 2017 WL 2333101, at *8 (D. Colo. May 30, 2017) (finding error and reversing where evidence of non-severe mental impairment existed, but the ALJ did not discuss those impairments after step two); *Prosser v. Colvin*, No. 14-cv-01964-RM, 2015 WL 5996376, at *6 (D. Colo. Oct. 14, 2015) (finding reversible error where the ALJ found medically determinable, but non-severe mental impairments, then failed to discuss those mental impairments in her RFC analysis); *Garcia v. Colvin*, No. 13-cv-01353-RBJ, 2014 WL 3953139, at *9 (D. Colo. Aug. 13, 2014) (The ALJ's finding that the plaintiff had some medically determinable mental issues that caused mild impairment "required the ALJ to include those impairments in his RFC analysis.").

The Commissioner nonetheless argues that mild social impairments may not warrant any workplace restrictions and that Dr. Lace's examination showed no significant issues with social interactions.  [#12 at 12-13]  The Court agrees with both propositions and had the ALJ advanced these explanations in her opinion, the Court would have no difficulty affirming.  But this Court "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."  *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).  And although the Court does not demand "technical perfection" by the Commissioner, the ALJ's decision must allow the Court to "follow the adjudicator's reasoning . . . and [ ] determine that correct legal standards have been applied."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).  Because the ALJ's decision does not allow the Court to conduct such an analysis, the Court must reverse the ALJ's decision.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, the Court **REVERSES** the Commissioner's decision that Plaintiff was not under a disability within the meaning of the SSA from April 15, 2019 through May 7, 2025 and **REMANDS** this matter to the Commissioner for rehearing and reconsideration consistent with this Order.

DATED:  April 5, 2026                                   BY THE COURT:


                                                        s/Scott T. Varholak
                                                        Chief United States Magistrate Judge